---

## MINA *v.* I. & V. FLORIO S. S. Co.

*(District Court, D. New Jersey.* May 25, 1885.)

1. ADMIRALTY PRACTICE—MISNOMER—WAIVER—APPEARANCE AND ANSWER.
    After a respondent has appeared generally, and answered upon the merits, it is too late to move for a dismissal because of a misnomer in the libel and monition.

2. CARRIERS OF GOODS BY VESSEL—BILL OF LADING—TRANSHIPMENT—DELAY—DAMAGE TO CARGO OF PRUNES.
    On the twenty-third, thirtieth, and thirty-first of March, 1881, L. shipped on board respondent's three steamers 600 casks of prunes at Trieste, to be delivered in New York, unto order, and took therefor bills of lading, in which respondent stipulated that said steamers were bound for New York, and reserved the right to tranship any part of said cargo to another steamer. Two of the steamers proceeded to Palermo, Sicily, and discharged the prunes, where they remained for 55 days, when they were shipped on another of respondent's steamers, brought to New York, and delivered in a damaged condition, owing to the delay that ensued in their transhipment, and the want of proper care in their handling and storage at Palermo. *Held,* that respondent was not bound to tranship in other vessels than his own, under the bill of lading, but that he was obliged to use diligence and care that adequate facilities were furnished to comply with its agreement to tranship without unreasonable delay, and that he was liable for the damage caused by his neglect to provide for the more direct transportation of the prunes to New York after their arrival at Palermo.

Libel *in rem.*
*Jas. K. Hill, Wing & Shoudy,* for libelants.
*Lorenzo Ullo,* for respondents.
NIXON, J. The libel in this case is filed against a foreign company, claiming damages for negligence and want of care in the tranship-

ment of 600 casks of prunes from Trieste to New York, and praying for process against the goods and chattels of the company within this district, if the respondent could not be found. The return of the marshal on the monition shows that not finding the respondents, he attached certain property, belonging to them; to-wit: the steamship Vicenzo Florio, her tackle, etc., in obedience to the clause of foreign attachment contained in the process. A general appearance was entered for the respondents by Lorenzo Ullo, Esq., a claim for the property seized put in by the I. & V. Florio Steam-ship Company of Palermo, satisfactory security given, and an answer filed to the merits of the libel, acknowledging the reception and transhipment of the prunes in the attached steamer, but denying the negligence and want of care complained of. A reference was made to a commissioner to take testimony. Commissions issued to the respondents for the examination of witnesses in foreign countries, and very voluminous evidence, has been returned and filed. When the case came up for final hearing, the proctor for respondents, before the argument, moved the court to vacate the attachment and dismiss the suit, as to the respondents, on the ground of a misnomer in the libel and monition. The motion comes too late; the general appearance to the suit by the respondents and an answer upon the merits, without objection, are always regarded as a waiver of such irregularities.

Expressing no opinion respecting the action of the court, if the respondents had put in a special appearance for the purpose of entering a motion to vacate, or had filed answer, which raised the question now suggested, I have no hesitation in holding that the respondents cannot be permitted to waive such defects at the beginning of the proceedings, and afterwards urge them at the conclusion of the case.

The libel alleges that on March 23, 1881, at Trieste, one Liedmann shipped on board the steamer Cariddi, owned by respondents, 200 casks of prunes, to be carried from that port to the port in New York; that on the thirtieth of the same month, he shipped on the Taormina, another steamer of the respondents, 200 other casks of prunes, to be delivered to the port in New York; that on the thirty-first of the same month he shipped 200 other casks, on board the last-named steamer, for the same destination; that said casks were to be delivered in New York, unto order, and that the agents of the respondents at Trieste signed bills of lading therefor, in which they stipulated that the said steamers were bound to New York, and reserved the right to tranship any part of said cargo to another steamer; that the said steamers Cariddi and Taormina proceeded from Trieste to the port of Palermo, Sicily, where they discharged said prunes, and the same remained at Palermo an unreasonable length of time, to-wit, for a period of 55 days; that they were afterwards shipped upon the steamer Vicenzo Florio, another vessel of respondents, and brought by her to New York, and delivered to the libelant in a dam-

aged and deteriorated condition, owing to the delay which ensued in their transportation, and the want of proper care in their handling and stowage at Palermo; that the respondents neglected to transfer said prunes from Palermo for the long period above stated, although they had a number of opportunities so to do; that after their shipment Leidmann indorsed the bills of lading in blank, and forwarded them to libelant for value; that libelant is the true and lawful owner of the merchandise therein described, and by reason of the negligence and want of care and diligence of respondents in the transportation and custody of said merchandise he has sustained damages to the amount of $6,000, which has been duly demanded, and not paid.

The I. & V. Florio Steam-ship Company of Palermo, Sicily, alleging itself to be a corporation duly organized under the laws of Italy, files its answer admitting the shipment of the prunes by Leidmann on the said steamer at Trieste, but denying that the steamers were bound for New York. The answer avers that the respondent corporation owns and manages two certain lines of steam-ships, of a different class and capacity; one of which carries merchandise along the east coast of Italy from Trieste to ports in Sicily, and back again to Trieste; and the other plies along the west coast of Italy to Palermo, in Sicily, and thence to the port of New York, and back again; and that, in the regular course of management of said two lines, all merchandise shipped on the east coast of Italy, intended to be delivered in New York, is transhipped at the port of Palermo on one of respondent's steamers bound to New York, and that such course of management is a matter of general notoriety among merchants in the ports where the steamers pass, and was also known to Leidmann, the shipper of the prunes; that when the prunes were put on respondent's steamers at Trieste, as alleged in the libel, the said Leidmann, with full knowledge of the usual mode of transportation, accepted bills of lading containing a stipulation that the respondents should have the liberty of transhipping the same upon any other of their steamers leaving the ports of Sicily for the port of New York; that the steam-ships Cariddi and Taormina proceeded, with the prunes on board, from Trieste to Palermo, where they were discharged, and remained for a certain time, awaiting an opportunity to tranship on one of the steam-ships of respondent leaving that port for New York; that they were, in fact, transhipped on the steam-ship Vicenzo Florio, one of the steamers of the respondent on the line between the ports of Italy and New York, with due dispatch, and in the proper and customary manner, and were carried to New York and duly delivered to the libelant; and that said transhipment was made without unreasonable delay and in the regular course of their business, and at the first opportunity which respondent had to forward the merchandise to the port of New York.

The bills of lading, which are made exhibits in the case, reveal the contract between the parties at the time of the shipment. From them

I learn that 600 casks were shipped at Trieste for New York on the steamers of respondent, as follows: On March 23, 1881, 200 casks on the Cariddi; on March 30th, 200 casks on the Taormina; and on March 31st, 200 other casks on the last-named steamer. That they were all shipped in good order and condition, to be delivered in the port of New York; "the liberty to tranship any part of said cargo by steamer" being reserved in the said bills of lading. The undertaking of the respondent was that the merchandise thus committed to its charge for delivery in New York would be transported there with reasonable care and dispatch,—not necessarily in the steamer selected for the voyage at Trieste, but in some steamer belonging to and under the control of the company with which the contract was made. I agree with the learned advocate for the respondent that a transhipment into steamers other than the respondent's was not in contemplation, or obligatory, under the above clause, in the bills of lading. But, nevertheless, they were obliged to use diligence and care that adequate facilities were furnished to comply with their agreement to transport without unreasonable delay.

Do the facts of the case show that the respondent performed its duty in this respect? One-third of the cargo was received by the Cariddi, at Trieste, on March 23d, and they reached Palermo on April 3d, following. The other two-thirds were shipped at Trieste, on the Taormina, on March 30th and 31st. It does not clearly appear when they arrived at Palermo, but the weight of the evidence is that it was about nine days afterwards. The only steamer of the respondent that sailed from Palermo to New York during the month of April was the Washington, which was lying at Palermo for several days, both before and after the arrival of the prunes. They were not forwarded by her to New York, and the excuse rendered is that she was already loaded when the Cariddi and Taormina arrived. I think it was the duty of the company, when they accepted the prunes and receipted for the delivery in New York, to ascertain whether they had at their command the means of their transportation within a reasonable time. If they had not, they should have declined to receive them. The Washington did not, and, it is alleged, could not, take them. Their next steamer for New York was the Vicenzo Florio, which did not leave Palermo until May 24th. In the mean time the prunes, taken from the Trieste steamers about the first of April, were kept, either in lighters or in a floating magazine, at the port of Palermo for nearly two months, awaiting the departure of another steamship. If any injury resulted to the cargo from this long detention, the loss must be chargeable to the respondent corporation, which caused it.

It should be observed, in this connection, that while the average time for a voyage from Trieste to New York, in a sailing vessel, is twice as great as is required for a steamer, the freight, or the cost of transportation, by the former is less by more than one-half than by the latter. Both methods were available in the present case, but

the steamer was selected, doubtless, on account of the promise of greater dispatch. The merchandise was delicate, and of a character to be damaged by any exposure or delay in a tropical climate. The Vicenzo Florio arrived in New York on June 11th,—about 80 days after they had been shipped at Trieste, and some weeks after they would have been regularly due if forwarded by a sailing vessel. There is no proof that the long delay was caused by any stress of weather, but it seems to have arisen from the respondent's neglect to provide for the more direct transportation of the merchandise to New York after its arrival in Palermo.

The testimony of Josiah Rich and John A. Jansen is quite explicit as to the fact and the cause of the damage to the cargo. Both had had large experience in the business, and for many years had handled the greater part of the Turkish prunes that had come into the port of New York. They agree in opinion, after a careful examination of the 600 casks, that the damaged condition of the prunes arose from the delay at Palermo in their transportation. It is a case where there should be a decree for libelant, and a reference to ascertain the damages, if the parties desire to take further evidence upon the subject.